UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                              Case No: 6:24-cr-00095-JSS-LHP

WILLIE LAWRENCE NELSON JR.,

     Defendant.

_____/

## ORDER

Defendant Willie Lawrence Nelson Jr. moves in limine to exclude evidence related to his ownership or possession of a firearm, his Facebook posts, his flight from police, his alleged attempted sexual assault of the child victim, his "eyeing" other girls and "being creepy" at the scene, video footage from officers' body-worn cameras, the 9-1-1 call made by the victim's mother, and the Child and Adolescent Forensic Interview (CAFI) of the victim conducted by the Federal Bureau of Investigation. (*See* Dkt. 52; Dkt. 67 at 4–5.) In response, the Government agrees not to introduce evidence related to Defendant's ownership or possession of a firearm, his Facebook posts, or the CAFI interview[1] but otherwise opposes Defendant's motions. (*See* Dkt. 63.) For the reasons outlined below, the court denies the motions in limine.

## APPLICABLE STANDARDS

---

[1] The Government represented at the July 18, 2024 hearing in this case that it does not intend to introduce the CAFI interview as evidence during its case-in-chief.

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." *In re Seroquel Prods. Liab. Litig.*, Nos. 6:06–md–1769–ACC-DAB, 6:07–cv–15733–ACC-DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably [a]ffect the fairness of the trial." *Id.* (internal quotation omitted). "A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." *Id.* (internal quotation omitted).

"The district court has broad discretion to determine the admissibility of evidence, and [the appellate court] will not disturb the [district] court's judgment absent a clear abuse of discretion." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998); *see also United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir. 2003) ("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

## ANALYSIS

Given the Government's response, the remaining topics are Defendant's flight, the alleged attempted sexual assault of the child victim, Defendant's "eyeing" other girls and "being creepy" at the scene, the footage from the body-worn cameras, and

the 9-1-1 call.  The court addresses these topics in turn.

### Defendant's Flight

The probative value of evidence of flight

> depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*United States v. Wright*, 392 F.3d 1269, 1278 (11th Cir. 2004) (quoting *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977)).  The probative value "is diminished if the defendant has committed several unrelated crimes or if there has been a significant time delay between the commission of the crime or the point at which the accused has become aware that he is the subject of a criminal investigation, to the time of flight." *United States v. Blakey*, 960 F.2d 996, 1000–01 (11th Cir. 1992).  "The ultimate decision on admissibility of flight evidence rests with the trial judge, whose exercise of discretion will not be overturned absent a showing of clear abuse." *Id.* at 1001.

Defendant makes the same arguments on the flight issue here, (*see* Dkt. 52 at 15–17), as he did in his motion to suppress his incriminating statements, (*see* Dkt. 38 at 11–12).  Specifically, he argues that by the time of his flight, no one had informed him of the offense he had allegedly committed, that he could have been running away from the victim's mother, who had threatened to tase the suspect, and that he could have been fleeing to avoid a marijuana-related arrest.  (Dkt. 52 at 15–17.)  The court rejects these arguments for the same reasons that it rejected them with respect to the motion to suppress.  The court also agrees with the Government that as alleged,

Defendant's "flight took place in the immediate aftermath of" his exposing himself to a child, which is generally a "more serious offense" than using marijuana.  (Dkt. 63 at 3.)  Additionally, the lack of any time delay between the offense conduct and the flight indicates a high probative value for the flight evidence.  *See Blakey*, 960 F.2d at 1000–01.

### The Alleged Attempted Sexual Assault of the Child Victim

The parties agree that among the Government's witnesses, only the child victim would have personal knowledge of what Defendant did to her or attempted to do to her when she was alone with him near the parking-lot restroom.  (Dkt. 52 at 17; Dkt. 63 at 5.)  Defendant asserts that the child victim's testimony should be limited to her personal observations and "should not be permitted to veer towards speculation or assumptions about what the perpetrator may have intended or desired."  (Dkt. 52 at 17.)  Any testimony that Defendant attempted to sexually assault the child victim, he argues, would lead the jury to "summarily convict [him] based on emotion" instead of the facts.  (*Id.* at 17–18.)  The Government responds that the child victim's fear that Defendant was going to sexually assault her is "within her own personal knowledge[,] and her opinion on what might happen is rationally based on her perception."  (Dkt. 63 at 5.)  The Government adds that the child victim's testimony on this issue would help the jury determine whether Defendant "exposed his genitals in a lewd or lascivious manner"—an element of the offense—and would allow the Government to rebut Defendant's anticipated defense that he "wandered down from the nude beach" in the area or "was relieving himself behind the restroom."  (*Id.*)

- 4 -

The court agrees with the Government.  The child victim can testify, based on her experience, about what she thought Defendant intended to do to her.  *See United States v. Layton*, 720 F.2d 548, 562 (9th Cir. 1983) (contemplating that a person can "have personal knowledge of events about to take place").   Moreover, because Defendant is accused of lewd or lascivious exhibition, evidence of his intent regarding the child victim is relevant and highly probative.  *See Schmitt v. State*, 590 So. 2d 404, 410 (Fla. 1991) ("Under Florida criminal law[,] the terms 'lewd' and 'lascivious' are synonymous:  Both require an intentional act of sexual indulgence or public indecency, when such act causes offense to one or more persons viewing it or otherwise intrudes upon the rights of others." (footnotes omitted)).  Although Federal Rule of Evidence 403 allows the court to exclude relevant evidence when the risk of unfair prejudice substantially outweighs the evidence's probative value, exclusion under this rule "is an extraordinary remedy which 'should be applied sparingly.'"  *United States v. Sawyer*, 799 F.2d 1494, 1506 (11th Cir. 1986) (quoting *United States v. Cole*, 755 F.2d 748, 766 (11th Cir.1985)).  The court can mitigate the prejudice to Defendant with a limiting instruction if necessary.  *See United States v. Chase*, 367 F. App'x 979, 982 (11th Cir. 2010) (finding no abuse of discretion when the district court admitted evidence tending to show the defendant's "interest in sex with young girls" because the evidence was "highly probative of his intent to entice a minor to commit sexual acts" and "any prejudicial value was mitigated by [a] limiting instruction").

### Defendant's "Eyeing" Other Girls and "Being Creepy" at the Scene

Defendant seeks to exclude evidence of his "eyeing" other girls and "being

creepy" at the scene of the crime pursuant to Federal Rules of Evidence 403 and 404. (Dkt. 52 at 18–19.) But evidence that is "not part of the crime charged" is not subject to Rule 404 when it "pertain[s] to the chain of events explaining the context, motive[,] and set-up of the crime." *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985) ("[Such evidence] is properly admitted if [it is] linked in time and circumstances with the charged crime, or [it] forms an integral and natural part of an account of the crime, or [it] is necessary to complete the story of the crime for the jury."). Here, evidence of how Defendant acted at the park prior to the offense conduct—particularly, his "eyeing" other girls and "being creepy"—is not subject to Rule 404 because this evidence is "linked in time and circumstances with the charged crime" and is necessary to "explain[] the context, motive[,] and set-up of the crime" and "to complete the story of the crime for the jury." *Id.* As the Government explains, witnesses who saw Defendant in the hours before he allegedly committed the offense "had an opportunity to observe where he parked, what he was wearing, and how he was acting"—all of which provides context, goes to Defendant's identity, and explains his connection to the witnesses. (Dkt. 63 at 6.) For the same reasons, the evidence is probative enough to overcome Defendant's Rule 403 challenge. *See Sawyer*, 799 F.2d at 1506; *see also United States v. Garrett*, 805 F. App'x 709, 712, 715 (11th Cir. 2020) (finding no abuse of discretion when the district court admitted "evidence of [the defendant]'s creation and possession of sexually explicit drawings" showing "young boys engaging in oral and anal sex acts with adult men" because the drawings were probative of whether the defendant "was the man depicted in [a] video" of child pornography and, although

"the drawings were likely prejudicial, as most evidence in child pornography and molestation cases is, the prejudice caused by their admission did not *substantially outweigh* their probative value").

### Footage from the Body-Worn Cameras

Defendant argues that all the footage from the body-worn cameras is this case should be excluded because it contains the following inadmissible material: hearsay from officers and witnesses, unduly prejudicial comments about Defendant, his prior arrest history, charges that officers planned to file against him, and prejudicial images portraying him as "shirtless, rear[-]hand[]cuffed, and surrounded by uniformed law enforcement." (Dkt. 52 at 19–20.)  Defendant bases this argument on Federal Rules of Evidence 403, 602, 701, 801, and 802 and further contends that "redaction or a piecemeal presentation of this evidence would [not] be practical or permissible during the trial" because "the inadmissible portions of the recordings are interspersed throughout" the footage.  (*Id.* at 20.)  In response, the Government asserts that the footage from Defendant's traffic stop earlier in the day should be admitted to show that he wore a white hat at that time and the portions of the footage that contain his statements to police should be admitted because they are not hearsay and are relevant. (Dkt. 63 at 6.)  The Government proposes muting or editing out any inadmissible material contained in the footage and instructing the jury as to the muted or edited footage.  (*Id.* at 6–7.)  The Government represented at the July 18, 2024, hearing in this case that it intends to play portions of the footage from the body-worn cameras, not all the footage.

The court agrees with Defendant that "[e]ven a cursory review" of the footage reveals some inadmissible material.  (Dkt. 52 at 19.)  But complete exclusion of the relevant evidence is unwarranted.  The Government seeks admission of the traffic-stop footage to show Defendant in a white hat because the perpetrator of the lewd or lascivious exhibition allegedly wore such a hat.  The image of Defendant from the traffic stop does not implicate most of the rules that Defendant cites.  *See Charlemagne v. Alibayof*, No. 20-62043-CIV-SMITH, 2022 U.S. Dist. LEXIS 97310, at *6 (S.D. Fla. Apr. 29, 2022) (citing *United States v. Clotaire*, 963 F.3d 1288, 1295 (11th Cir. 2020)) ("[A] soundless video does not qualify as hearsay.").  To the extent that it implicates Rule 403, the probative value of the image is high enough with respect to Defendant's identity—and the risk of prejudice low enough with respect to the speeding citation— that the image should not be excluded.  *See United States v. Perez*, 844 F. App'x 113, 117 (11th Cir. 2021) (concluding that the district court did not err when it refused to exclude footage from body-worn cameras because the evidence was relevant, the defendant's statements were not hearsay, the probative value was not substantially outweighed by the risk of prejudice, and the evidence did not violate the defendant's Fifth Amendment rights).

With respect to the footage of Defendant's statements to police, the court agrees with Defendant that showing him handcuffed and surrounded by law enforcement carries a risk of unfair prejudice.  *See United States v. Wilson*, 979 F.3d 889, 915 (11th Cir. 2020) ("Generally, a defendant's appearance in . . . shackles is inherently prejudicial because it . . . could affect a juror's ability to presume [that] the defendant

is innocent."). However, some of Defendant's statements, such as those that relate to his flight from the police and thus his consciousness of guilt, are probative enough that their probative value is not "substantially outweighed" by this risk. Fed. R. Evid. 403; *see United States v. Wright*, 392 F.3d 1269, 1277 (11th Cir. 2004) ("[E]vidence of . . . flight is admissible to demonstrate consciousness of guilt and thereby guilt." (internal quotation omitted)). Accordingly, the portions of the footage that contain statements by Defendant that bear on his flight from police, for example, will not be excluded.

Because "[t]he balance under Rule 403 should be struck in favor of admissibility," *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989), the court denies Defendant's motion in limine to exclude all the footage from the officers' body-worn cameras.

### The 9-1-1 Call

Defendant asserts that the 9-1-1 call made by the victim's mother should be excluded as hearsay. (Dkt. 52 at 20–23.)[2] *See* Fed. R. Evid. 801 & 802. The Government responds that the call falls under the hearsay exceptions for present sense impressions and excited utterances. (Dkt. 63 at 7–8.) *See* Fed. R. Evid. 803(1)–(2).

The exception for present sense impressions requires the declarant to have seen

---

[2] Defendant devotes a single sentence to arguing that portions of the 9-1-1 call should be excluded as irrelevant and unfairly prejudicial under Rule 403. (Dkt. 52 at 23.) The court need not consider these arguments. *See United States v. Augustin*, 661 F.3d 1105, 1116 n.5 (11th Cir. 2011) ("This argument is so conclusory that it might properly be considered abandoned."). In any event, the court agrees with the Government that the 9-1-1 call is relevant and probative enough not to warrant exclusion because the call "explains what [had] just occurred" in the parking lot (that is, the alleged offense conduct) and "explains how and why law enforcement got involved" in the case. (Dkt. 63 at 8.)

the event being described.  *See United States v. Davis*, No. 8:23-cr-34-CEH-AAS, 2024 U.S. Dist. LEXIS 80878, at \*6–7 (M.D. Fla. May 3, 2024).  Here, the victim's mother did not see the event; only the child victim did.  (*See* Dkt. 52 at 22; Dkt. 63 at 7.)  Thus, the call placed by the mother cannot fall under that hearsay exception.

The excited utterance exception "requires that 1) there be an event startling enough to cause nervous excitement; 2) the statement be made before there is an opportunity to contrive or misrepresent; and 3) the statement be made while the person in under the stress of the excitement caused by the event." *United States v. Beverly*, 369 F.3d 516, 539–40 (6th Cir. 2004).  Defendant maintains that the 9-1-1 call "could not be made under the stress of the excitement caused by the startling event" because "the minor victim's mother did not witness the startling event."  (Dkt. 52 at 23.)  The court disagrees.  As alleged by the Government, the mother had just learned from her daughter that a man had just exposed himself to the daughter, masturbated in front of her, and beckoned for her to join him behind the parking-lot restroom.  (Dkt. 63 at 8.) "While the declarant must still be under the stress or excitement that the startling event caused, the excited utterance need not be made contemporaneously to the startling event." *United States v. Belfast*, 611 F.3d 783, 817 (11th Cir. 2010).  "It is the totality of the circumstances, not simply the length of time that has passed between the event and the statement, that determines whether a hearsay statement was an excited utterance." *Id.*  Here, under the totality of the circumstances, the victim's mother was freshly under the stress of the startling events when she reported them on the 9-1-1 call.  *See Navarette v. California*, 572 U.S. 393, 400 (2014) ("Unsurprisingly, 911 calls that would otherwise

be inadmissible hearsay have often been admitted [as excited utterances].").

Because the excited utterance exception applies, the 9-1-1 call will not be excluded as hearsay.

## CONCLUSION

For the reasons explained above, Defendant's motions in limine (Dkts. 52 & 67) are **DENIED**.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

**ORDERED** in Orlando, Florida, on July 19, 2024.

Copies furnished to:
Counsel of Record